OPINION OF THE COURT
Hancock, Jr., J.
For a village having both a Planning Board and a *118 Zoning Board of Appeals, Village Law § 7-708 (2)[1] establishes an exemption period of three years after the filing of a subdivision plat during which an amendment increasing lot area or dimension requirements shall not “be applicable to or in any way affect any of the lots shown and delineated on such subdivision plat” (§ 7-708 [2] [a]). Prior to an increase in the applicable area and dimension requirements, the owner of an approved subdivision failed to complete it or to apply for building permits on all of the proposed lots. It did, however, take sufficient steps toward completion of the proposed subdivision before the exemption period expired to acquire common-law vested rights. The question presented by the appeal of respondent Zoning Board is whether the petitioner owner, by virtue of these vested rights, is exempt from compliance with the new, more stringent area and dimension requirements when it applies for building permits for its remaining lots. Supreme Court and the Appellate Division both held that the owner is protected under the exemption in Village Law *119 § 7-708 (2) (b), and we agree. There should, accordingly, be an affirmance.
I
On April 29, 1975, the Town of Ramapo Planning Board accepted for filing petitioner’s "average density” subdivision plat (see, Town Law § 281). As a condition of its "average density” approval, the town required that 12.105 acres of the 33.522 acres in the subdivision be irrevocably dedicated to it for parkland purposes. The subdivision was approved for development in two sections, the first to consist of 9 lots and the second of 22 lots.
On July 3, 1975, petitioner’s predecessor dedicated the parkland and thereafter, on September 24, 1975, the subdivision plat was filed. On June 29, 1982, the town approved a revised subdivision plat. This plat, filed on October 14, 1982, did not in any way modify the original layout of the lots, streets and other improvements.[2]
Between 1980 and early 1984, petitioner built seven homes on section one of the subdivision. No homes were constructed in section two which had been laid out for lots having widths of between 108 and 120 feet and areas complying with the 22,500 square-foot minimum requirement of the Town of Ramapo ordinance.
In 1984, when the Village of New Hempstead was incorporated, the territory of the town which encompassed petitioner’s subdivision became part of the Village. On January 2, 1986, the Village amended the applicable zoning ordinance to increase the minimum area requirement for average density lots to 35,000 square feet and the minimum width requirement for such lots to 150 feet. Prior to this time, petitioner had installed various improvements on the subdivision including, on section two, drainage facilities, water and sewer lines, fire hydrants, curbs and curb cuts, and underground telephone and electric service. After the amendment to the ordinance— and with the Village’s knowledge — petitioner installed a paved road on section two.
In June 1986, petitioner applied for a building permit to construct a house on lot D-10 in section two. The Village building inspector denied the permit because petitioner failed *120 to make certain public improvements to a county road adjoining the subdivision, and because the lot did not meet the amended, more restrictive Village zoning requirements.[3] With respect to this second reason, the inspector ruled that the exemption in Village Law § 7-708 did not apply inasmuch as petitioner had not sought a building permit during the three-year exemption period. Petitioner then commenced its first article 78 proceeding to review the denial of its permit. Supreme Court dismissed this proceeding for petitioner’s failure to exhaust administrative remedies since it had not sought relief in an appeal to the Zoning Board of Appeals. Accordingly, petitioner appealed the building inspector’s denial to the Zoning Board of Appeals and, as alternative relief, requested a variance.
When respondent Zoning Board of Appeals denied petitioner’s application in all respects, it commenced the present article 78 proceeding. Supreme Court annulled respondent’s determination and directed the Village inspector to issue the building permit for lot D-10 and the other lots in the subdivision "if, as, and when petitioner makes an application for same”. The Appellate Division agreed with Supreme Court’s conclusion that petitioner had acquired vested rights to complete the subdivision under the originally applicable area and dimension requirements, but modified by requiring petitioner to fulfill certain conditions in order to obtain the building permit.[4]
II
This appeal turns on a question of statutory interpretation: the intended effect of the language in Village Law § 7-708 (2) creating the exemption. Respondent Zoning Board of Appeals contends that the statute affords protection only for those lots in a filed subdivision which an owner has completed or for which it has actually obtained a building permit during the exemption period. Petitioner argues that the statute protects subdivision lots in which an owner has acquired common-law *121 vested rights during the period. In construing section 7-708 (2), as with any legislation, we first "look to the particular words for their meaning, both as they are used in the section and in their context as part of the entire statute.” (Price v Price, 69 NY2d 8, 13.) For if the statute is unambiguous and its meaning evident from the language, as respondent contends, we need look no further (see, Sega v State of New York, 60 NY2d 183,190-191).
From the language of section 7-708 (2), as it applies to the Village of New Hempstead, there is no question: (1) that its purpose is to create an exemption from the operation of amendments imposing stricter area and dimension requirements; and (2) that the period of the exemption is three years commencing on the date of the filing of the subdivision plat. But the statute contains no language which prescribes the conditions which must be satisfied for an owner to receive the benefit of the exemption. It does not specify whether as a prerequisite for claiming the exemption for a particular lot, the owner must, during the exemption period, have completed construction on the lot or obtained a building permit for such construction — or whether it is sufficient if the owner has taken sufficient steps toward completion of the subdivision under the existing, more liberal zoning requirements to have acquired vested rights in the remaining undeveloped lots. The only statutory mandate is that the stricter requirements of the amended ordinance "shall not * * * be applicable to or in any way affect any of the lots shown and delineated on such subdivision plat” (Village Law § 7-708 [2] [a] [emphasis added]). Exactly what the lots are protected from — i.e., what is meant by the phrases "be applicable to” and "in any way affect” — is not clear. It is necessary, therefore, to look beyond the words of the statute at the circumstances surrounding its adoption and to consider the policy reasons for enacting legislation in an area where common-law rules have long controlled (see, Price v Price, supra, at 13-14), being mindful, of course, that the " 'legislative intent is the great and controlling principle’ ” (id., at 14; People v Ryan, 274 NY 149, 152).
Village Law § 7-708 (2) and its counterpart, Town Law § 265-a, were enacted in 1960 (L 1960, chs 1060, 1061). The Legislature adopted a similar measure for cities in 1961 (General City Law § 83-a, L 1961, ch 275). Prior to these enactments, questions concerning the rights of owners of approved subdivisions to complete their subdivisions in accordance with the regulations existing at the time of their approval were gov *122 erned exclusively by the common law pertaining to vested rights.
The New York rule, both before and after the exemption statutes, has been that where a more restrictive zoning ordinance is enacted, an owner will be permitted to complete a structure or a development which an amendment has rendered nonconforming only where the owner has undertaken substantial construction and made substantial expenditures prior to the effective date of the amendment (see, People v Miller, 304 NY 105, 107-109; Matter of Putnam Armonk v Town of Southeast, 52 AD2d 10, 14-15; 4 Rathkopf, Zoning and Planning § 50.03 [3], at 50-25 — 50-28 [4th ed]; 1 Anderson, New York Zoning Law and Practice § 6.18, at 229-234 [3d ed]). The doctrine of vested rights has generally been described as an application of the constitutionally based common-law rule protecting nonconforming uses (see, People v Miller, supra, at 107; 4 Rathkopf, op. cit., at 50-13, n 2). But the doctrine is also said to have been grounded on principles of equitable estoppel (see, Matter of Pokoik v Silsdorf, 40 NY2d 769, 773, and at 774 [Breitel, Ch. J., dissenting]; 7 Rohan, Zoning and Land Use Controls § 52.08 [4], at 52-78 — 52-80; 4 Rathkopf, op. cit., § 50.04, at 50-41 — 50-42). Whether rooted in equity or the common law, the operation and effect of the vested rights doctrine is the same and it has been applied alike to a single building or a subdivision (see, Matter of Putnam Armonk v Town of Southeast, 52 AD2d 10, supra; Elsinore Prop. Owners Assn. v Morwand Homes, 286 App Div 1105, 1106-1107; Ward v City of New Rochelle, 20 Misc 2d 122, affd 9 AD2d 911, affd 8 NY2d 895; 4 Rathkopf, op. cit., § 50.03 [3] [d], at 50-39 — 50-41).
Under the vested rights doctrine as it applied to subdivisions (prior to the exemption statutes), nothing cut off the period during which a developer could acquire vested rights after initial approval. On the other hand, nothing prevented a municipality from subjecting the undeveloped lots in an approved subdivision to more stringent restrictions at any time after the plat was filed so long as vesting had not occurred. Protecting the owner depended entirely on the date of vesting relative to the effective date of the amended ordinance. If vesting occurred first, the owner was protected. It mattered not when the events occurred with respect to the initial date of plat approval, but only which came first.
The enactment of the statutory exemption provisions (Vil *123 lage Law § 7-708 [2]; Town Law § 265-a [2]; General City Law §83-a [2]) obviously supplied something which the decisional law of vested rights lacked: a specific period during which the developer could secure the right to complete the unfinished lots free from the requirements of the new, more restrictive ordinance and beyond which such right could not be secured. But the statutes did not define precisely what the developer must do during the period to obtain the protection of the exemption.
Respondent Zoning Board of Appeals contends that, under the statute, in order to achieve freedom from the amended ordinánce for any uncompleted lot, a developer must have actually completed the lot or obtained a building permit for it. Under this construction, a developer which had done more than enough during the exemption period to acquire common-law vested rights for the remaining undeveloped lots in the subdivision, would be required, nevertheless, to comply with the amended ordinance for these lots. Such construction, if adopted would produce an extensive change in the law, and would deprive the developer of what, but for the effect óf the statute, would be its right to achieve vesting during the exemption period under the common-law rule. It would, thus, contravene the established rule of construction that zoning legislation of the type in question which is "in derogation of the common law * * * must be strictly construed against the municipality which * * * seeks to enforce [it]” (Matter of Allen v Adami, 39 NY2d 275, 277; see, Matter of 440 E. 102nd St. Corp. v Murdock, 285 NY 298, 304-305; 1 Anderson, New York Zoning Law and Practice § 17.01, at 740-743 [3d ed]; see generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 153, at 331-332 ["(t)he courts will not construe a statute as abolishing a common-law right in the absence of a clear intent on the part of the Legislature”]).
Contrary to respondent Zoning Board’s position, a commonsense analysis of the legislative purpose of Village Law § 7-708 and Town Law § 265-a in the light of the circumstances surrounding their original enactment (L 1960, chs 1060, 1061) does not suggest that the legislation was intended to deprive a subdivision developer of its capacity to acquire vested rights in a subdivision during the exemption period. The legislative history shows that the enactment was the culmination of a successful legislative compromise between the views of the developers and the differing views of the municipalities and that representatives of both groups urged its adoption (see, *124 Mem of Westchester County Village Officials Assn, Bill Jacket, L 1960, chs 1060, 1061; Mem of Office for Local Government, id.; Mem of New York State Home Builder’s Assn, id.; Mem of American Institute of Planners, id.; Mem in support of A 3834, id.). Indeed, Governor Rockefeller in his memorandum approving the legislation stated that the "purpose of these bills is to reconcile the interests of home builders and developers who have made financial commitments relying on existing zoning ordinances, and the interests of towns and villages in not being unduly restrained from upgrading zoning requirements” (1960 McKinney’s Session Laws of NY, Messages of Governor, at 2064).
Petitioner’s interpretation of the statute — that it was intended to permit a developer to gain vested rights during the exemption period — seems fully consistent with this legislative purpose of effecting a compromise in a statute which would fairly balance the conflicting interests of the developers and municipalities. Under petitioner’s construction, each group gains something and gives up something. The developers gain the assurance of a definite period during which they can protect their subdivisions by securing vesting; they give up the possibility of protection under the statute after that period. The municipalities gain the authority to enforce an upgrading of their zoning requirements at any time after the exemption period and the assurance that the new requirements will bind any developer which has not by then achieved vesting; the municipalities give up their former unrestricted power to subject a subdivision to new requirements at any time before the owner has acquired vesting rights.
The view of the statute espoused by respondent Zoning Board, on the other hand — that a developer can derive no protection for the balance of its subdivision by achieving vesting during the exemption period — permits undeniably harsh results. Obviously, where a developer has completed a substantial portion of a subdivision, it could be faced with large losses and unanticipated additional cost if compelled to restructure its plans and dismantle and reconstruct subdivision improvements in order to complete the remaining lots. As has been observed, a rule of such stringency applying to subdivisions imposes a formidable barrier to development (4 Rathkopf, op. cit., § 50.05 [3], at 50-73) and actually impedes rational land use planning (id., at 50-72). Under established rules, we must presume that the Legislature could not have intended respondent’s interpretation of the statute which *125 produces such unreasonable and potentially unjust consequences (see, Ferres v City of New Rochelle, 68 NY2d 446, 454; Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38; McKinney’s, Cons Laws of NY, Book 1, Statutes §§ 141, 143, 146, at 280-284, 286-290, 297-302).
We accordingly agree with the courts below that Village Law § 7-708 (2) was intended to permit a developer to secure the right to complete a subdivision in accordance with the existing zoning requirements by manifesting a commitment to the execution of the subdivision plan through completing improvements and incurring expenditures in connection therewith, during the exemption period, sufficient to constitute vesting under common-law rules. Moreover, our review of the record concerning the work performed and expenditures made by petitioner confirms the conclusion of the Appellate Division that, as found by the Supreme Court, the substantial improvements and expenditures made during the three-year exemption period "conferred a vested right to obtain building permits in accordance with the provisions of the former zoning ordinance.” (152 AD2d 365, 377.)
The order of the Appellate Division should be affirmed,[5] with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order affirmed, with costs.

. Insofar as is pertinent, Village Law § 7-708 provides:
"2. (a) Notwithstanding any inconsistent provision of this chapter or of any general, special or local law, the provisions of a zoning law hereafter adopted, and the provisions of a change or amendment hereafter adopted to a zoning law which provisions establish or increase lot areas, lot dimensions which are greater than or in excess of the lot areas or lot dimensions of the lots shown and delineated on a subdivision plat of land into lots for residential use and which said subdivision plat also shows and delineates one or more new streets, roads or highways in addition to lot lines and dimensions of the lots thereon delineated and which said subdivision plat has been duly approved by the planning board, if any, of the village in which the land shown on said plat is situate, or approved by such other board or officer, if any, of such village, vested with authority to approve subdivision plats, and which said subdivision plat or the first section thereof has been duly filed in the office of the recording officer of the county in which the land shown on said subdivision plat is situate, or which provisions establish or increase side, rear or front yard or set-back requirements in excess of those applicable to building plats under the provision of the zoning law, if any, in force and effect at the time of the filing of the said subdivision plat or first section thereof, shall not, for the period of time prescribed in paragraph (b) of this subdivision, be applicable to or in any way affect any of the lots shown and delineated on such subdivision plat.
"(b) If at the time of the filing of the subdivision plat or first section thereof referred to in paragraph (a) of this subdivision there was in the village both a zoning board and a planning board vested with authority to approve subdivision plats, then the exemption provided for in such paragraph shall apply for a period of three years after the filing of the subdivision plat or first section thereof. ” (Emphasis added.)
Provisions virtually identical to those in Village Law § 7-708 (2) are contained in Town Law § 265-a and General City Law § 83-a.

. It is not disputed that the three-year exemption period at issue began to run on the date the revised plat was filed (Oct. 14,1982).

. The other reason given for the denial of the permit — i.e., that petitioner failed to pay an inspection fee — is not at issue on this appeal.

. Both Supreme Court and the Appellate Division also concluded that— if the new, more restrictive zoning requirements were held to be applicable despite the exemption period in Village Law § 7-708 (2) — the Zoning Board of Appeals lacked a rational basis for the denial of petitioner’s request for a variance. In the light of our conclusion that petitioner was entitled to the benefit of the exemption provision, we do not reach the variance issue.

. We have considered respondent’s remaining arguments and conclude that they provide no basis for disturbing the Appellate Division’s order.